IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ANTHONY HICKS                                                          PLAINTIFF

v.                                Civil No.: 1:08-cv-1089

PAUL LUCAS *et al.*                                                    DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Anthony Hicks, an inmate in the East Arkansas Regional Unit of the Arkansas Department of Correction, in Brickeys, Arkansas, filed this civil rights action under 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Harry F.  Barnes, United States District Judge for the Western District of Arkansas, referred this case to the undersigned for the purpose of making a report and recommendation.

Now before this Court is the Motion for Summary Judgment, ECF No.  22, filed by Defendants.  The Court has also considered the Memorandum Brief in Support of the Motion for Summary Judgment, ECF No.  23, and the Statement of Facts in Support.  ECF No.  24. Additionally, at the request of the Plaintiff, the Court submitted to Plaintiff a questionnaire, which would serve as Plaintiff's response to the Motion for Summary Judgment.  ECF Nos. 25, 30.  The Court has received and considered Plaintiff's response.  ECF No.  31.

## I.    Background

As this case is before the Court on Defendants' Motion for Summary Judgment, the Court will recite the facts pled by the non-moving party, the Plaintiff.  Plaintiff has brought this action against the Defendants in both their official and individual capacities.  ECF No.  31.

Plaintiff alleges he was denied medical care, denied access to the Court, suffered excessive

force, was verbally abused, and was retaliated against for filing a civil rights lawsuit.[1]  Plaintiff also alleges he was denied access to the grievance procedure and the Defendants tampered with his legal materials and interfered with his legal mail.

Specifically, Plaintiff states that he was transferred from the Cummins Unit of the Arkansas Department of Correction to the Ouachita County Jail and had to enter the Ouachita County Jail transfer van while shackled in leg-irons.  ECF No. 1 at ¶5.  Plaintiff states there were no steps or other avenues for inmates to enter the van, and when he asked Officer Speer how to enter the van, Speer told Plaintiff to pull himself up on the bar over the van door.  *Id.*  Plaintiff did as he was instructed, an felt a "snap or pop in his right arm and severe pain" followed.  *Id.*  at ¶ 6.  Plaintiff states Speer was "indifferent" and stated he was given strict orders to bring Plaintiff straight to the jail and not do anything else for Plaintiff.  *Id.*  When Plaintiff arrived at the jail, Speer placed Plaintiff in an isolation cell, and despite Plaintiff telling Speer about his injury.  *Id.*  at ¶ 7.

Plaintiff states that after Speer walked away, Plaintiff began banging on the bars to alert jail staff.  ECF No. 1.  Capt.  Norwood then came to Plaintiff's cell, with a Taser gun in his hand and threatened to "knock the rest of Plaintiff's teeth out of [Plaintiff's] mouth"[2] if Plaintiff beat on the bars again, as well as tase Plaintiff until Plaintiff passed out and then kick Plaintiff.  *Id.*  Plaintiff states Norwood ignored Plaintiff's complains that he was injured and required medical attention, and that Norwood warned Plaintiff not to continue to complain about Plaintiff's "little injury."  *Id.*  at ¶8.

Plaintiff states on that same date, March 15, 2007, he filed a grievance requesting medical

---

[1]  Plaintiff also made allegations concerning David Talley, an attorney who represented Plaintiff on the state criminal charges underlying Plaintiff's incarceration.  Those claims were dismissed on October 5, 2009.  Order, ECF No. 10.  Accordingly, the Court will not recount Plaintiff's allegations against Mr. Talley.

[2]  Plaintiff filed a previous case in the Western District of Arkansas, *Hicks v. Norwood et al.*, 1:06-cv-01086, in which Plaintiff alleged, *inter alia,* that Norwood had used excessive force on him, causing him to lose eleven teeth.  Plaintiff's excessive force claim was dismissed after an evidentiary hearing.  ECF No. 83, 1:06-cv-01086.

attention.  *Id.*  at ¶10.  Four days later, on March 19, 2007, Defendant Strickland answered this grievance, and Plaintiff was transferred to the Ouachita Medical Center on March 20, 2007.  *Id.* Defendant Strickland stated on his response to the Plaintiff's grievance that the first he knew of Plaintiff's injury was via the grievance sent on March 15, 2007, which was only received by him on March 19, 2007.  ECF No.  24-6.

Plaintiff was examined by Dr.  Jeani Trevillyan, who Plaintiff states ordered him to be seen by his family doctor and to also see a specialist in Little Rock for his injuries.  ECF No.  1 at ¶ 10. Plaintiff further states that he was prescribed medication for his injury and for an unrelated infection, which Defendants never ordered.  *Id.*

On March 22, 2007, Plaintiff filed a grievance requesting medical attention, because he had never received the medication prescribed for him by Dr.  Trevillyan.  *Id.*  at ¶ 11. Plaintiff continued to submit grievances on March 25, April 8, April 9, and April 20, 2007, regarding his arm injury, pain he was suffering, and the fact he had not received any medication prescribed to him for these issues. *Id.*  at ¶ 12.

On May 2, 2007, Plaintiff was again taken to see the doctor.  *Id.*  at ¶ 13.  Plaintiff states he was treated and examined by a unknown male doctor, who prescribed medication for Plaintiff's injured right arm and for his groin infection.  ECF No. 1 at ¶ 13.  When Plaintiff returned to the jail, a chair was missing from Plaintiff's cell, along with his "hygienes."  *Id.*  at ¶ 14.  Plaintiff also noticed his legal papers were "in a ruckus."  *Id.*  Upon putting the items back in order, Plaintiff found a letter from a witness he intended to use as evidence in his criminal case was missing, as well as part of his interrogatories from his civil rights lawsuit.  *Id.*  Plaintiff wanted to speak with Officer Gill, because he was told by two trustee inmates that Gill was responsible for taking the items from his cell.  *Id.* To get Gill's attention, Plaintiff began banging on the bars to his cell.  ECF No.  1, ¶ 15.

Captain Norwood responded to Plaintiff banging on the bars.  According to Plaintiff, Norwood came to Plaintiff's cell with a Taser gun in hand, and did not ask Plaintiff to be handcuffed before opening Plaintiff's door, nor did he give any orders or commands, but rather shot Plaintiff in the stomach with the Taser gun until Plaintiff lost consciousness.  *Id.*  at ¶ 16.  When Plaintiff regained consciousness, Strikland and Norwood had him by the arm and neck and picked Plaintiff up and slammed him on the concrete floor of his cell.  *Id.*

Plaintiff further alleges that Norwood took the Taser hooks out of his skin in a manner that caused unnecessary pain before slapping Plaintiff across the face "with open hands" while Strickland held down Plaintiff's hands so he could not block Norwood's slaps.  *Id.*  at ¶ 17.  Norwood then grabbed Plaintiff and utilized the Taser several more times against the upper part of Plaintiff's arm and shoulder, while Strickland watched and laughed.  *Id.*

Norwood then utilized the built-in video camera feature on the Taser gun, but turned it off when he noticed Plaintiff was injured.  ECF No.  1 at ¶18.  Both Norwood and Strickland told Plaintiff to get up, but Plaintiff was unable to move.  *Id.*  Paramedics arrived at the scene and also told Plaintiff to get up, and when he did not comply, they pulled him out of his cell in the hallway by his uniform.  *Id.*  The paramedics attempted to place Plaintiff in a wheelchair, but had to place him on a stretcher, instead.  *Id.*  at ¶19.  Plaintiff was then taken to the Ouachita County Medical Center where Dr.  Stephen Tabe examined him.  Plaintiff states he was prescribed pain relievers and muscle relaxants.  *Id.*  The medical records show he was prescribed Ibuprofen and Flexeril.  ECF No.  31-2.

Upon return to the Ouachita County Detention Center, Plaintiff was placed in solitary confinement and "separated from [his] cases pending in civil and criminal court."  ECF No.  1 at ¶ 20.  Plaintiff asked for his legal materials and was told that Lucas, Strickland, and Norwood were the only persons with access to Plaintiff's cell.  *Id.*

The next day, May 3, 2007, Plaintiff began to bang the bars on his cell door when he believed some of the top ranking officers were on duty. *Id.* at ¶ 21. Strickland, Norwood and Gill responded to Plaintiff's cell with Strickland and Gill carrying Taser guns and Norwood carrying a long black flashlight. *Id.* Plaintiff was told by Strickland to quit beating on the door or Strickland would "kick [Plaintiff's] ass." *Id.* Plaintiff requested his legal materials and Strickland told Plaintiff he "could not have shit." ECF No. 1 at ¶ 21.

Plaintiff then began to suffer from anxiety, depression, mental anguish and psychological pain, continuing until at least the date of Plaintiff's Complaint. *Id.* at ¶ 22. Further, Plaintiff has been in severe pain since he was injured by the defendants and his condition "has worsened" because of the medical attention he received at the Arkansas Department of Correction.[3] *Id.*

Further, on many occasions, Plaintiff's medical prescription was not refilled for days or weeks at a time, leaving Plaintiff "always preponding how to su[r]vive the next brutal attacks(s) by the defendants [sic]" and he "feared for [his] life all the time." *Id.* Plaintiff also filed grievances, in May, June, and July of 2007, specifically to Defendants Lucas, Strickland, and Norwood, about his need for medical attention and to get medication refilled. ECF No. 1, ¶ 23. Plaintiff was transferred to a doctor in August, who prescribed more medication. *Id.*

On May 13, 2007, Plaintiff filed a written objection to a Report and Recommendation entered in a separate case in the Western District of Arkansas. *Id.* at ¶ 24. Plaintiff states his "Motion for injunction or temporary restraining order was denied because [his] written objection pursuant to 28 U.S.C. § 636(b)(1) never got mailed to the courts . . .." *Id.* Plaintiff indicates he was not able to respond to the Report and Recommendation as properly as he intended, due to being placed on the

---

[3] Plaintiff has not brought forth any denial of medical care claims against the Arkansas Department of Correction in this case, and such claims would be more properly venued in the Eastern District of Arkansas.

third floor of the Ouachita County Detention Center, away from his legal materials, but that he did attempt to respond. *Id.* Plaintiff states Defendants were "attacking me through their mailing system." ECF No. 1, ¶ 24.

Plaintiff states the Defendants continued to interfere with his mail on July 2, 2007, when he prepared a motion to dismiss to be filed in his state criminal case, and placed it into the mail by handing it to Officer Speer, a night jailer, for mailing out the next morning on July 3, 2007. *Id.* at ¶ 25. Defendants "interfered by holding mail," which "caused [him] to be coerced into taking time for crimes I did not commit and denying [his] motion to dismiss to be given a fair ruling." *Id.* Plaintiff went to court on July 9, 2007, and his Motion to Dismiss was filed on July 10, 2007. *Id.* Plaintiff also states the withholding of mail was intentional and retaliation for the filing of his previous lawsuit against the Defendants. *Id.*

## II.     Applicable Law

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56 (c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    Discussion

### i.     Official Claims

Plaintiff has sued Defendants in their official capacities. Plaintiff's official capacity claims are tantamount to suing Ouachita County. Official-capacity liability under 42 U.S.C. § 1983 occurs only

-6-

when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Because *Monell* specifically rejected liability based solely on respondeat superior, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *Id.* Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels ." *Monell*, 436 U.S. at 690-91.

In his Response to the Motion for Summary Judgment, ECF No. 31, Plaintiff states the custom or policy leading to the violation of his constitutional rights was "[t]he policy and procedure under access to court, due process, excessive force, retaliation and correspondence, and denial of medical attention." Clearly, such conclusory statements can not make out a custom or policy claim. The Plaintiff cannot sustain his Section 1983 claim against Ouachita County with just his vague and conclusory allegations that the County had unconstitutional policies. To withstand the Defendants' Motion for Summary Judgment, he must show some specific deficiency in the County's policies, which evidences a deliberate disregard for the constitutional rights of inmates. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2nd Cir. 1993) ("mere assertion . . . that a municipality has such a custom or policy [that purportedly caused a violation of the plaintiff's constitutional rights] is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference").

Plaintiff further states the County's stated policy of no retaliation was not followed and he

was segregated in retaliation for filing a lawsuit against some of the defendants.  Again, Plaintiff has provided no more than conclusory allegations that he was placed in segregation "for no apparent reasons other than retaliation" for a lawsuit he had filed.  ECF No. 31 at 29.  Plaintiff has provided no evidence or indication of why his lawsuit would or did motivate Defendants to place him in segregation.  *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir.1996) (inmate claiming retaliation is required to meet burden of proving actual motivating factor for adverse action was as alleged); *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir.1996) (per curiam) (allegations of retaliation must be more than speculative and conclusory).  Moreover, Plaintiff has not specified which Defendant made the decision to place him in segregation and actually caused the alleged retaliation.

Finally, Plaintiff alleges there was a failure to train Defendant Norwood properly regarding the use of a Taser, and that Defendant Norwood was not trained with Taser use before using a Taser on Plaintiff on May 2, 2007.  Plaintiff has presented evidence of a certificate issued to Norwood on December 7, 2006, before the incident at issue, stating Norwood was certified as trained with the use of a Taser.  ECF No. 31 ex. 2 at 12.  Plaintiff has also presented a portion of deposition purportedly taken of Norwood on March 19, 2008, in which Norwood stated he was trained with using a Taser in August of 2007, and had no training prior to that time.  ECF No. 31 Ex. 2 at 13.  Norwood did testify at the same deposition that he was trained with a "little shocking device and stun shield" made by the Nova company before his Taser training.  *Id.*  Although the exact stun-gun device utilized by Norwood in May 2, 2007, is never specified by the Defendants, it is referred to as a "Taser" throughout the incident reports, not as a Nova.  *See* ECF No. 24 ex. 3-4.  Thus, the Court assumes the stun-gun utilized was a Taser gun.

Plaintiff claims the County failed to train Norwood in the proper use of the Taser weapon, yet allowed Norwood to carry and deploy the weapon, thus resulting in excessive force used against

him in violation of his Fourth Amendment rights. A municipality may be liable under § 1983 for inadequate training of police only under the limited circumstances where "the failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 380 (1989). The inquiry in an inadequate training claim is first, whether the training is adequate, and if not, whether the inadequate training can be said to represent city policy. *Id.* at 389-90. The inadequate training may be said to represent city policy where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need ." *Id.* Typically a plaintiff demonstrates a pattern of constitutional violations to prove that the need for more training was obvious; however, the Supreme Court has not foreclosed the possibility that evidence of a single violation of constitutional rights may demonstrate the obvious need for additional training. *Id.* at 409. Evidence of the single constitutional violation needs to be "accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Id.*

Here, Plaintiff has provided evidence that Norwood was not trained in the use of a Taser at the time Norwood used the Taser on him. According to Plaintiff, Norwood deployed the Taser with no warnings or orders given. Defendants have offered no evidence of any policies or procedures of Ouachita County regarding the use of Tasers. Therefore, at first glance, it would appear that Plaintiff had established a genuine issue of fact regarding whether Norwood was properly trained with a Taser at the time he used the Taser on Plaintiff and whether any lack of training caused excessive force to be used against him.

However, if Plaintiff was seeking injunctive relief, when a prisoner is no longer subjected to

an allegedly unconstitutional or unlawful course of action, the prisoner's claims for declaratory and injunctive relief are moot. *Pratt v. Corr. Corp. of Am.*, 267 Fed. Appx. 482, 2008 WL 612571, *1 (8th Cir. 2008) (table decision) (concluding inmate's 1983 claims for declaratory and injunctive relief were moot when he was transferred to another facility and was no longer subject to alleged unlawful conditions); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir.1999) (section 1983 claims for declaratory and injunctive relief are moot when plaintiff is no longer subject to alleged unlawful conditions). Plaintiff's claims for injunctive relief is now moot because he is no longer incarcerated in the Ouachita County facility.

Furthermore, as stated above, as Plaintiff's failure to train claim involves a single incident, it must be accompanied by a showing that Ouachita County has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. However, Plaintiff has presented evidence that Norwood was trained with a Taser, and has not alleged or provided evidence that any of this training was inadequate – only that the training did not occur before the Taser was used on him. Thus, as training has been provided to Norwood, and there is no allegation this training was not adequate, there is no showing that Ouachita County has failed to train its employees to handle recurring situations where there would be an obvious potential for a constitutional violation. Plaintiff's official-capacity claims should be dismissed in their entirety.

      **ii.**     <u>**Individual Capacity Claims**</u>

           **i.**     <u>**Denial of Medical Care**</u>

Plaintiff's allegations regarding denial of medical care can be separated into two categories: 1) a delay of medical care claim regarding the four day delay from March 15 to March 20, 2007, for medical attention to his shoulder injury; and 2) a denial of medication claim regarding medications he was prescribed but did not receive.

-10-

To succeed on his Eighth Amendment medical claims, plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence in the treatment of an inmate. *Id.* The standard for "deliberate indifference" includes an objective and a subjective component. *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (*citing Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, a plaintiff must show 1) that the medical deprivation was objectively sufficiently serious; and 2) that prison officials subjectively knew about the deprivation and refused to remedy it. A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (*quoting Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)); *see also Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citing *Camberos*, 73 F.3d at 176). A mere difference of opinion between a plaintiff and his treating physician about what treatment is appropriate does not give rise to a colorable claim under section 1983. *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990); *Courtney v. Adams*, 528 F.2d 1056 (8th Cir. 1976). Likewise, disagreement with a diagnosis or course of medical treatment is insufficient to state a claim. *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993). Nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment. *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).

    a.    **Delay of Medical Care**

Plaintiff claims he was delayed medical care for four days – from March 15, 2007, when he injured his shoulder in the prisoner transport van, to March 20, 2007, when he was taken to the Ouachita County Medical Center. Plaintiff was diagnosed with a soft tissue injury to his right bicep.

ECF No. 31 ex. 2.

When a plaintiff seeks relief on claims of deliberate indifference based on allegations that defendants delayed his medical care, he must show how he was adversely affected by the delay. The objective seriousness of the deprivation is also measured by reference to the effect of the delay in treatment. *Coleman v. Rahija*, 114 F.3d at 784 (*citing Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir.1997)); *see also Beyerbach v. Sears*, 49 F.3d at 1326. An inmate who complains that the delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. *Beyerbach*, 49 F.3d at 1326 (*quoting Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)).

Plaintiff has come forward with no evidence to support that he was adversely affected by any alleged delay in receipt of medical care. In fact, Plaintiff has failed to come forward with evidence that his arm pain was in any way related to a serious medical condition of which a delay could adversely affect. Based on this lack of evidence, no reasonable jury could find that any alleged delay in Plaintiff receiving medical care deprived him of medical treatment for an objectively serious medical condition. *Laughlin v. Schriro*, 430 F.3d 927 (8th Cir. 2005) (lack of evidence that delay in arranging treatment of inmate's heart attack had detrimental effect on inmate precluded finding of objectively serious deprivation of medical care).

### b.   Denial of Medication

Plaintiff alleges he was prescribed the following medications, which he did not receive as prescribed while at the Ouachita County Jail: Enalapril, Asprin, Ibuprofen, and an unknown drug

prescribed on May 2, 2007.  Enalapril is a drug used to treat high blood pressure.[4]  Enalapril and Asprin were prescribed to Plaintiff on December 8, 2006, by Dr.  Doshi at the Arkansas Department of Correction.  ECF No.  31 Ex.  2 at 14.  According to the document provided by Plaintiff, the prescription for Enalapril would expire on March 8, 2007, and the Asprin prescription would expire on February 8, 2007.  *Id.*  Plaintiff provided no other evidence he was prescribed these drugs by a physician after those dates of expiration.  The date of Plaintiff's transport to the Ouachita County Jail was March 15, 2007, well after the expiration of Plaintiff's Enalapirl and Asprin prescriptions. Therefore, Plaintiff can not show that Defendants were deliberately indifferent to his need for Enalapril and Asprin, as Plaintiff has provided no evidence these medications were actually prescribed to him during  his incarceration at the Ouachita County Jail.

Moreover, Plaintiff was provided Asprin throughout his stay at the Ouachita County Jail.  *See* ECF No.  24-6.  Although Plaintiff states he would sign for his medications and then the medication names were written subsequently, ECF No.  31, ¶ 11,  Plaintiff has brought forth no evidence to show the medication logs are incorrect or that he did not receive the medications as listed.  Instead, Plaintiff merely states that because the medications were written in after he signed for pill call, there could be a question as to accuracy.  Plaintiff does not state on which dates the logs are inaccurate or that he even knows the logs to be inaccurate for any date, rather Plaintiff merely states his suspicion as to the accuracy of the logs in general.  Such conclusory statements do not create a genuine issue of material fact.

Finally, the Court notes that Plaintiff did receive Metoprolol, a high blood pressure drug[5], and

---

[4] U.S. National Library of Medicine, National Institutes of Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000865 (last visited Feb.  15, 2011).

[5] U.S. National Library of Medicine, National Institutes of Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000795 (last visited Feb.  15, 2011).

Isosorbide, a drug for treating chest pain[6], routinely from March 15, 2007, his book-in date, until around April 15, 2007.  ECF No.  24-6.  A memo dated April 25, 2007 was addressed to Plaintiff from Norwood stating that Plaintiff was out of medication and Plaintiff should inform Norwood if the medication is for blood pressure or if any of the medication needed to be refilled.  *Id.*  at 4.  In a grievance dated April 30, 2007, Plaintiff complained he did not have his medication "and have not had any for quite awhile."  ECF No.  24-2.  Plaintiff stated he feared for his life due to chest pain, dizzy spells, heartburn, and hot flashes.  *Id.*  Plaintiff also indicated his blood pressure was up.  *Id.*  Norwood replied May 1, 2007, stating that Norwood had asked Plaintiff the previous week about his medication and for Plaintiff to fill out a request.  *Id.*  Plaintiff stated Norwood never asked him about medication and he never saw any memo from Norwood.  ECF No.  31, ¶ 25.

Even if Plaintiff did not receive the memo from Norwood, Plaintiff has not established that any of the Defendants were deliberately indifferent to his needs for Asprin or Enalapril.  Plaintiff has provided no evidence that any Defendant knew of a valid and current prescription for these medications and then failed to provide it to Plaintiff.

On March 20, 2007 Plaintiff was seen at the Ouachita County Medical Center's emergency room by Dr.  Trevillyan.  ECF No.  24-5.  Dr.  Trevillyan prescribed Plaintiff Ibuprofen at 600 mg, for seven days, for his arm injury.  *Id.*  at 5.  The medication logs show that Plaintiff was not given any ibuprofen from March 20 - 27, 2007, which would have been the seven days as prescribed.  ECF No.  24-6.  Plaintiff was given APAP at this time, which is a pain reliever with acetaminophen.  *Id.*  The APAP was previously prescribed to Plaintiff, and there is no indication his dosage increased, and Defendants have provided no affidavit or other evidence to show the APAP is a valid medical

---

[6]  U.S. National Library of Medicine, National Institutes of Health, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682348.html (last visited Feb.  15, 2011).

substitute for the Ibuprofen as prescribed.  Therefore, a genuine issue of material fact exists as to Plaintiff's denial of medical care claim regarding the denial of Ibuprofen from March 20 - 27, 2007, as prescribed by Dr. Trevillyan.

Finally, Plaintiff alleges he was prescribed an unknown medication for pain relief when he returned to the emergency room on May 2, 2007, and this medication was never provided to him. The medical records provided by Plaintiff show he was ordered Flexeril and Ibuprofen by Dr. Tabe on May 2, 2007.  ECF No. 31.  Flexeril is the same as cyclobenzaprine, which was given to Plaintiff on May 3, 2007 through May 10, 2007.  *Id.*  Ibuprofen, a common pain reliever, was also given to Plaintiff at this time.  *Id.*  Plaintiff has not established a genuine issue of fact as to Flexeril or Ibuprofen being denied to him.

### ii.  Denial of Access to the Court

Plaintiff has alleged he was representing himself in a case previously filed in this Court, and he did not have adequate access to law libraries or persons trained in the law.  Prison officials may not deny or obstruct an inmate's access to the courts to present a claim.  *McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir. 1993) (*citing Bounds v. Smith*, 430 U.S. 817, 821 (1977) and *Johnson v. Avery*, 393 U.S. 483, 485 (1969)).  However, it is clearly established that meaningful access to the courts is broader than access to a law library.  *Klinger v. Dep't of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997) (inmate unable to prevail on a denial of access to courts claim even where the denial of access to library was complete and systematic).

Furthermore, in order to proceed with a denial of access to the court claim, a prisoner must demonstrate that he was actually harmed or injured by the defendants' actions.  *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003).  Specifically, in *Lewis*, the Court explained that "actual injury" means "actual prejudice with respect to contemplated or existing

-15-

litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348.

Plaintiff first contends that he was denied access to the court due to the actions of his attorney, David Talley, by Talley's failure to visit him or investigate evidence of Plaintiff's actual innocence.  Plaintiff's claims relative to Mr.  Talley and his representation of Plaintiff are not at issue in this case.  In fact, Mr.  Talley was previously dismissed from this matter as he is not a state actor for Section 1983 litigation.  ECF No.  10.

Plaintiff further contends that he needed to know how to file a motion for injunctive relief and a motion to appoint counsel, but was unable to do so because he was denied access to counsel.  The Court notes that Plaintiff was able to file his Motions.  He has provided copies of his Motion for Injunctive Relief, ECF No.  31-1, which is file stamped by the Western District of Arkansas; his Motion for Counsel, ECF No.  31-2, which was file stamped by the Ouachita County Circuit Clerk, ostensibly filed in his state criminal case.

Plaintiff's argument appears to be that but for denying him access to an adequate law library, his motions would have succeeded because they would have been better drafted or researched. However, the actual injury requirement can not be met by a subjective belief that a Plaintiff might have found successful arguments to prevail on his various motions if he had been given access to a law library.  *Hartsfield v.  Nichols*, 511 F.3d 826, 832 (8th Cir.  2008) (district court properly dismissed access to courts claim because general assertions that Plaintiff did not know what arguments to make was insufficient to demonstrate actual injury); *Bandy-Bey v. Crist*, 578 F.3d 763, 765 (8th Cir. 2009) (access to courts claim fails where plaintiff cannot demonstrate that defendants' failure to grant him requested library time resulted in actual injury).

### iii.  Excessive Force

Plaintiff contends Norwood used excessive force against him on May 2, 2007, when Norwood

-16-

deployed a Taser on him with no prior warnings or orders. Plaintiff states the Taser caused him to become unconscious. When he regained consciousness, Strickland had his legs and Norwood had him under his arms and around his head and neck, and together they picked up Plaintiff and slammed him on the concrete floor of his cell. ECF No. 1, ¶ 16. Plaintiff further states that Norwood took the Taser hooks out of Plaintiff's stomach in a manner designed to cause unnecessary pain and that Norwood also began slapping Plaintiff across the face with open hands, while Strickland held down Plaintiff's hands. Norwood then continued to shock Plaintiff with the Taser pressed to the upper part of Plaintiff's arm and shoulder.

While Defendants have provided several incident reports, including statements from inmates witnessing the events unfold, the only witnesses to all of the events were Plaintiff and Norwood. Due to the differing nature of their accounts of how the events occurred, there remains a genuine issue of fact as to whether the force used by Norwood with the Taser was reasonable under the circumstances. Further, there is also a genuine issue as to whether the use of force by Strickland was reasonable under the circumstances. Accordingly, the Motion for Summary Judgment should be denied regarding Plaintiff's excessive force claims against Strickland and Norwood.

### iv. Retaliation

Similar to Plaintiff's official capacity claims of retaliation, Plaintiff has alleged that in retaliation for a previous lawsuit filed in the Western District of Arkansas, he was held in isolation, he was tased by Norwood, his mail was delayed in being sent out, and his response to a Report and Recommendation was not mailed at all. In general, conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason. *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001); *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990). "Indeed, the retaliatory conduct does not itself need to be a

constitutional violation in order to be actionable." *Id.  See also Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994) ("[W]hen retaliatory conduct is involved, there is no independent injury requirement.").

Courts understand that "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  Further, the courts have recognized that prison officials must have broad administrative authority. *Graham*, 89 F.3d at 79. For this reason, it has been said that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)(not every response to a prisoner's exercise of a constitutional right is actionable). *See also Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir.1996)( per curiam )(speculative and conclusory allegations cannot support a retaliation claim).

Plaintiff has alleged he was placed in isolation merely in response to having filed a prior lawsuit.  Plaintiff provides no evidence, other than the existence of this prior lawsuit, to show how his segregation status was retaliatory.

Similarly, Plaintiff has alleged he placed a letter into the mail on May 13, 2007.  Plaintiff states this letter was his objections to a Report and Recommendation filed in a previous case in the Western District of Arkansas.  Plaintiff alleges the Defendants purposefully did not send the letter in retaliation for him filing the lawsuit, and the docket sheet for his previous case reflects that no objections were filed. *See Hicks v. Norwood*, 6:06-cv-1086.  Plaintiff has offered no evidence Defendants withheld his letter, either intentionally doing so or as a result of negligence.  Further, Plaintiff has provided no evidence that, assuming the Defendants did withhold the letter, they did so in retaliation for Plaintiff's lawsuit.

Plaintiff also claims that on May 2, 2007, Officer Gill went into his cell without Plaintiff's

consent or presence and confiscated legal documents.  Plaintiff alleges this was done in retaliation for his pending lawsuit.   Again, Plaintiff provides no evidence connecting the alleged act with a retaliatory motive.

On May 2, 2007, Defendant Norwood deployed a Taser on Plaintiff, which is the basis of Plaintiff's excessive force claim.  Plaintiff further alleges the excessive force was used on him as retaliation for the filing of a previous civil rights lawsuit, in which Norwood was a named defendant. However, like the other allegations noted above, Plaintiff offers no evidence of retaliatory motive, beyond the existence of the previous lawsuit.

Finally, Plaintiff has alleged he placed a letter containing a Motion to Dismiss in his state case into the mail on the morning of Tuesday, July 3, 2007.  This letter was not filed in his case until a week later, on Tuesday, July 10, 2007.  Plaintiff has not provided any evidence the delay in filing of his Motion was related to any action or inaction of the Defendants, or that any action or inaction was related to the filing of his lawsuit.  As such, his claims of retaliation should be denied.

### v.   **Grievance Procedure**

Plaintiff alleges that he submitted grievances regarding a number of issues at the Ouachita County Jail, but received no response in return.  Inmates do not have a constitutional protected right to a grievance procedure.  *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (*citing Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)).  Therefore, a prison official's failure to respond to an inmate's grievances or to return copies of those grievances to that inmate, without more, is not actionable under § 1983.  *Id.*  Accordingly, Plaintiff's claims based upon the inadequacies of the grievance procedures at the Ouachita County Jail should be dismissed and summary judgment granted on those claims.

### vi.  **Access to the Courts**

Plaintiff alleges that on May 2, 2007, Officer Gill took legal papers from his cell, including a letter from a witness in Plaintiff's criminal case and interrogatories from civil rights litigation pending in federal court.   On May 13, 2007, Plaintiff alleges his response to a Report and Recommendation entered in his federal civil rights case was not mailed.  Finally, Plaintiff alleges that a Motion to Dismiss he intended to file in his state criminal case was delayed by Defendants because he placed it in the mail on July 3, 2007, but it was not filed in his case until July 10, 2007.

Denial of access to legal mail is a denial of access to the court claim, and requires an actual injury.  *Turner v. Ms. Douglas*, 2007 WL 87628, at *2 (E.D. Ark. Jan. 10, 2007) (*citing Lewis v. Casey*, 518 U.S. 343, 349 (1996)) ("To state a valid § 1983 claim due to interference with an inmate's legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded her access to the court or prejudiced an existing action."); *see also Jones v. Mail Room Staff*, 74 Fed. Appx. 418, 419 (5th Cir.  2003) (unpub. per curiam) (*citing Lewis*, 518 U .S. at 349-51) (plaintiff did not allege that he was prejudiced in any pending or contemplated litigation because the mail room staff had opened his legal mail; therefore, he fails to state a claim).

Plaintiff has brought forth no evidence the alleged withholding of his objections to the Report and Recommendation, or the alleged delay of his Motion to Dismiss were deliberate and malicious interferences with his access to the Court.   Plaintiff cannot create a genuine issue of material fact based upon his unsupported beliefs there was a malicious motive prompting Defendants to delay or withhold his mail.  *de Llano v. Berglund*, 282 F.3d 1031, 1035-36 (8th Cir.  2002).  Plaintiff must show the existence of facts in the records to create a genuine material issue.  *Larson v. Kempker*, 414 F.3d 936, 939 (8th Cir. 2005).  Moreover, Plaintiff provided no evidence of how the delay of his Motion to Dismiss, or the lack of objection to the Report and Recommendation actually impeded his

access to the court or prejudiced an existing action.

With regard to the Motion to Dismiss, Plaintiff indicates this was a matter to be filed in his state criminal case. Plaintiff was also represented by counsel in that case, and thus, the court would not be required to even consider any motion made by Plaintiff. *See e.g., Monts v. Lessenberry*, 806 S.W. 2d 379, 382 (holding that trial court should exercise discretion to either strike pro se motion on ground that defendant is represented by counsel and thus was not entitled to proceed *pro se* or could make an appropriate ruling on the motion). Thus, Plaintiff can not establish he was prejudiced or harmed.

Similarly, upon review of Plaintiff's previous case in this court, *Hicks v. Norwood*, 6:06-cv-1086, the Report and Recommendation to which Plaintiff alleges he was unable to object, was adopted by the District Court Judge, and Plaintiff's Motion was denied on the merits. ECF No. 33; 6:06-cv-1086. Plaintiff has not alleged how his objections would overcome that ruling by the Court. Moreover, this Court notes that Plaintiff did not attempt to resubmit his objections or move for reconsideration of the district court's ruling, which were options available to him beyond objections to the Report and Recommendation itself. Thus, Plaintiff has not shown how he was harmed or prejudiced.

Plaintiff has further alleged that legal papers were taken from his cell including a letter from a witness in his criminal case and interrogatories in his federal civil rights case. Again, Plaintiff has made no mention of how he was harmed by the loss of these documents. As such, he has not alleged a constitutional claim.

## IV.   <u>Conclusion</u>

Accordingly, it is the Report and Recommendation of the undersigned that the Motion for Summary Judgment, ECF No. 22 be **GRANTED in part and DENIED in part**. I recommend the

Motion for Summary Judgment be **DENIED** as to Plaintiff's claims of excessive force by Defendants Strickland and Norwood, and his claims of denial of medical care due to being denied ibuprofen as prescribed to him on March 20, 2007.  I recommend the Motion for Summary Judgment, ECF No. 22, be **GRANTED** in all other respects.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636 (b) (1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **22nd day of February 2011.**

/s/  Barry A.  Bryant
HON.  BARRY A.  BRYANT
U.S.  MAGISTRATE JUDGE